IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ARSENIO AGUILAR PASCUA, ) | CIVIL NO. 13-00406 SOM/KSC |
| ) | |
| Plaintiff, ) | |
| ) | ORDER DISMISSING COMPLAINT |
| vs. ) | FOR LACK OF SUBJECT MATTER |
| ) | JURISDICTION |
| OPTION ONE MORTGAGE ) | |
| CORPORATION et al, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER DISMISSING COMPLAINT**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

**I.      INTRODUCTION.**

    This case is brought by a property owner who says he is unable to discern which entity he should be sending mortgage payments to.  Defendant Option One Mortgage Corporation brings a motion to dismiss all claims brought against it by Plaintiff Arsenio Aguilar Pascua.  Defendants Homeward Residential, Wells Fargo Bank and Ocwen Loan Servicing (who collectively refer to themselves as the "Ocwen Defendants") "substantively" join Option One's motion with respect to Count III of the Complaint, which seeks to bring a quiet title action against all Defendants.[1]  Concerned that it may lack subject matter jurisdiction over this

_____

    [1] While a simple joinder would simply ask for the remedy a movant seeks, which may be relief only for the movant itself, this court's rules also contemplate "substantive" joinders, in which parties file supplemental memoranda detailing their positions and may seek for themselves the same relief the movant seeks.  See Local Rule 7.9.

action, the court asked for supplemental briefing on the jurisdictional question.  At the hearing on the present motion, Pascua's counsel agreed to voluntarily dismiss Counts I and II of the Complaint, which alleged violations of the Fair Debt Collection Practices Act and Hawaii's Unfair Competition and Practices Act, respectively.  ECF No. 33.  This leaves only Count III before the court.  Pascua asserts that the court has diversity jurisdiction over Count III.

Although Count III is styled as an action to "quiet title," Pascua is seeking only a determination by this court as to the identity of the entity to which his debt is owed.  With his only injury being the uncertainty he feels regarding that identity, Pascua fails to show that this uncertainty equates with a controversy involving in excess of $75,000.  He points only to a debt exceeding $75,000, but that debt is not in controversy.  The court therefore concludes that it lacks subject matter jurisdiction over the only remaining claim and dismisses the case.

**II.      BACKGROUND.**

Pascua obtained a home mortgage loan from Option One in July 2007.  Complaint ¶ 2.  At some point in 2008, Option One apparently sold the loan to Wells Fargo Bank, which then appears to have enlisted Homeward as its loan servicer.  Pascua alleges that the sale of the loan and assignment of the mortgage to Wells

Fargo was improper. He affixes to his Complaint an "Assignment of Mortgage," signed by a representative of Option One, in which the space for the name of the assignee is blank. Plaintiff's Exhibit K, ECF No. 1-13. It is this document that Pascua argues demonstrates the impropriety of the assignment.

At some point in 2012, Pascua began corresponding with Homeward regarding his loan, apparently asking for proof that Homeward was in fact the servicer. On May 29, 2012, Homeward sent Pascua a letter stating that it had acquired the servicing rights to Pascua's debt from Option One on April 30, 2008. Plaintiff's Exhibit F, ECF No. 1-8. Homeward stressed that it was unable to provide Pascua with the original promissory note but intimated that the mortgage had been recorded with Hawaii's Bureau of Conveyances. Id.

On July 27, 2012, Wells Fargo, through its attorneys Pite Duncan LLP, sent Pascua a letter purporting to "provid[e] formal notice of default under the terms and conditions of the Note and Security Instrument . . . for failure to pay the required installments when due, as of August 1, 2011." Plaintiff's Exhibit H, ECF No. 1-10. The letter further stated that, to avoid foreclosure, Pascua had to pay $41,139.92 within thirty-three days of the date of the letter. Id. The letter specifically stated that the check for $41,139.92 should be "payable to and mailed to Homeward Residential, Inc." Id.

Pascua continued his correspondence with Homeward, and on August 29, 2012, Homeward sent Pasuca another letter stating that Homeward had "acquired the servicing rights to [Pascua's] account from Option One Mortgage Corporation" on July 1, 2008, about two months later than previously indicated. Plaintiff's Exhibit I, ECF No. 1-11. The letter referred to an attached copy of "the Adjustable Rate Note and Mortgage" and noted that the mortgage document specifically said that the note and mortgage "can be sold one or more times without prior notice to [Pascua]" and that "a sale might result in a change in entity (known as the 'Loan Servicer') that collects monthly payments due." Id. While the letter did not identify the owner of Pascua's debt, nothing in the letter suggested that Homeward itself purported to be the owner of the loan. Instead, the letter clearly stated that "Homeward acquired the *servicing* rights" to the loan and was the "entity that collects [the] monthly payments" due from Pascua. Id. (emphasis added).

Unsatisfied with this response, Pascua continued his correspondence. On February 7, 2013, Homeward sent Pascua another letter, stating that "the owner and holder for [Pascua's] account is Wells Fargo Bank, N.A., as Trustee for Soundview Home Loan Trust" and that "Homeward is the current servicer of the account and collects payments *on behalf of* the owner." Plaintiff's Exhibit G, ECF No. 1-9 (emphasis added). The letter

4

further stated that "if the Note Holder (Homeward) has not received the full amount of any monthly payment by the end of 15 calender days after it is due, a late charge will be assessed for the overdue payment." Id. Pascua suggests that the description of Homeward as "Note Holder" creates confusion as to who is actually the owner of Pascua's debt. See Complaint ¶ 22. However, the parenthetical reference to Homeward appears to be a reference to the lender's agent, who was to be the recipient of the payment. Nothing in the rest of the letter or in any of the other letters from Homeward affixed to Pascua's Complaint suggests that Homeward is anything but a loan servicer acting on behalf of Wells Fargo.

On February 13, 2013, Pascua received a letter from Homeward stating that, effective March 01, 2013, it was transferring the servicing of Pascua's account to Ocwen Loan Servicing. Plaintiff's Exhibit L, ECF No. 1-14. The letter noted that the "transfer of servicing . . . [did] not affect any term or condition of [Pascua's] financing agreement." Id. Ocwen appears to be the current loan servicer for Pascua's account.

**III.     LEGAL STANDARD.**

"[A] court may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of [an] action" Snell v. Cleveland, Inc., 316 F.3d 822, 826 (9th Cir. 2002). A federal district court has subject matter jurisdiction

5

over a nonfederal claim if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States[.]"  28 U.S.C. § 1332(a)(1).

"Where the plaintiff originally files in federal court, the amount in controversy is determined from the face of the pleadings."  Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010) (internal quotation omitted). "The amount in controversy alleged by the proponent of federal jurisdiction . . . controls so long as the claim is made in good faith."  Id.  A court may dismiss a complaint for lack of diversity jurisdiction only if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount."  Id.  However, it is "the party asserting diversity jurisdiction [that] bears the burden of proof."  Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986).

**IV.      ANALYSIS.**

Pasuca asks this court to "declare which of the [defendants, if any,] is the owner of the Mortgage."  Complaint ¶ 1.  Pascua "does not dispute that he owes a debt under the Note and Mortgage," but says he is concerned that he does not "know to which party to make his future mortgage payments."  Id. ¶ 88. His asserted injury is apparently the possibility that he "will be liable for double payments" if he "makes payments to the wrong

party." Id.  Pasuca styles his claim as one to "quiet title" under section 669-1(a) of Hawaii Revised Statutes, and asks this court for a declaratory judgment "pursuant to its powers under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring . . . the interest (if any) of the Defendants and the Plaintiff in the Subject Property and in the Mortgage."  Complaint ¶ 89.

"[T]he Declaratory Judgment Act does not expand the jurisdiction of the federal courts, [but] *where jurisdiction exists*, the Act is intended to allow earlier access to federal courts in order to spare potential defendants from the threat of impending litigation."  Seattle Audubon Soc. v. Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996) (emphasis added).  Pascua asserts that jurisdiction exists here under the federal diversity statute, 28 U.S.C. § 1332.

Jurisdiction founded on diversity "requires that the parties be in complete diversity and the amount in controversy exceed $75,000."  Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir.2003).  Complete diversity means that "each of the plaintiffs must be a citizen of a different state than each of the defendants."  Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1095 (9th Cir.2004).  "[A] complaint must include allegations of both the state of incorporation and the principal place of business of corporate parties."  Harris v. Rand, 682 F.3d 846, 850 (9th Cir. 2012).  The Ocwen Defendants correctly

note that the Complaint does not mention any of their states of incorporation.  Instead, the Complaint simply notes that the Ocwen Defendants are corporations, and alleges their various principal places of business.  Complaint ¶¶ 12-14.  That is insufficient to establish that the parties in this case are diverse.

Even if Pascua had correctly alleged the Ocwen Defendants' states of incorporation, his Complaint suffers from a more fundamental jurisdictional defect--the amount in controversy does not exceed $75,000.  As an initial matter, the court is skeptical that anything is in controversy at all, or that Pascua has suffered an injury-in-fact.  Pascua accepts that he owes payment under the mortgage agreement and accepts that his loan is in default.  While what may be a prospective foreclosure may constitute an injury, Pascua appears to be suggesting that he is able to make the required payment to avert foreclosure but is *choosing* not to for fear of paying the wrong party.  The argument that a party has "standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing" unless that harm is "certainly impending."  Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1151 (2013).  It is well settled that Pascua "cannot manufacture standing merely by inflicting harm on [himself] based on [his] fears of hypothetical future harm that is not certainly impending."  Id.  Given that only one party

claims to be the owner of Pascua's debt, the possibility of double payment is not "certainly impending." The proposed foreclosure itself, therefore, cannot be the injury that gives Pascua standing to bring his claim.

At most, the injury-in-fact that Pascua suffers is the "uncertainty" he says he has regarding what entity he is supposed to pay. It is not clear that this subjective feeling of uncertainty is sufficiently concrete and particularized to constitute an injury-in-fact. See City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8 (1983). ("It is the reality of the threat of [objective] injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). It is also not clear that Pascua's purported injury, such as it is, is caused by Defendants' conduct rather than by Pascua's own apparent inability to discern the nature of his obligations.[2] See, e.g.,

---

[2] Pascua claims to be confused as to which party to pay, despite Defendants' apparent agreement that Wells Fargo is the true owner of the debt, as trustee for Soundview Home Loan Trust, and has authorized a loan servicer to collect amounts owed by Pascua. At the hearing on the present motion, the court asked Pascua's counsel whether Pascua's claim would be moot if all Defendants signed a joint declaration stating that payment was owed to Wells Fargo, that Option One no longer had any rights to Pascua's loan, and that Ocwen (previously Homeward) was simply a loan servicer acting on behalf of Wells Fargo. Pascua's counsel responded that such a declaration would be insufficient because Pascua could not "trust" what Defendants said. It is clear, therefore, that the relief Pascua truly desires is *not* a declaration from this court that any Defendant is the "true owner" of the debt. Such a court order would have the same effect as a joint declaration by Defendants. If Pascua's fear is that two Defendants will seek to collect the same debt, then a

Grocery Mfrs. Ass'n v. E.P.A., 693 F.3d 169, 178 (D.C. Cir. 2012) (noting that there is no standing when the asserted injury is "so completely due to the complainants' own fault as to break the causal chain")(internal quotation omitted)).

Even if Pascua has standing to bring his claim based on the asserted injury of "uncertainty," the value of the relief Pascua requests cannot plausibly exceed $75,000. Pascua argues that the amount in controversy is the amount of the debt, which is more than $75,000. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). Pascua's full debt, like his property, is *an* object *in* this litigation, but it is not *the* object *of* the litigation. The object of the litigation is "the particular and limited thing sought to be accomplished by the action." Ridder Bros., Inc. v. Blethen, 142 F.2d 395, 399 (9th Cir. 1944). See also Jackson v. Am. Bar Ass'n, 538 F.2d 829, 831 (9th Cir. 1976)

---

joint declaration precludes that possibility. If Pascua's fear is that a third party not before the court will attempt to collect after he has paid one Defendant, then a court order cannot prevent that possibility. At most, a declaration by the court can assign rights *among parties*; it cannot bind third parties not before the court. The only relief the court can order that is not achieved by a joint declaration is a declaratory judgment that no Defendant owns the debt. Neither the Complaint, nor any statement by Pascua's counsel at the hearing, suggests that Pascua has a good faith basis for believing that no Defendant owns his debt.

10

("Where the complaint seeks injunctive or declaratory relief . . . the amount in controversy is . . . the value of the right to be protected or the extent of the injury to be prevented."); Freeland v. Liberty Mut. Fire Ins. Co., 632 F.3d 250, 253 (6th Cir. 2011) ("Where a party seeks a declaratory judgment, the amount in controversy is . . . the value of the consequences which may result from the litigation.") (internal quotation omitted).

Here, the matter Pascua says he wants to accomplish does not implicate the entire debt or the value of the property. Although he styles his claim as one to "quiet title," Pascua does not allege that he holds title to the property free and clear of any debt obligation. See, e.g., Woodside v. Ciceroni, 93 F. 1, 4 (9th Cir.1899). Nor does Pascua seek to enjoin a foreclosure. See, e.g., Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076 (9th Cir. 1973). In either such situation, the full debt or the property itself would be the object of the litigation, because the claimant would be trying to prevent paying the debt or losing the property. Pascua, by contrast, asks for a declaration to prevent him from feeling uncertainty as to whom to pay. He is not actually being asked to pay his acknowledged debt more than once. The amount in controversy is therefore *the subjective value to Pascua* of freeing him from that risk. Courts are often disinclined to speculate as to the monetary value of something so

11

vague and amorphous as a feeling of uncertainty. Jackson, 538 F.2d at 831 (noting the difficulty of adjudicating rights that "appear to be intangible, speculative, and lack the capability of being translated into monetary value").

In any event, it is implausible to suggest that the subjective value to Pascua of such a declaration is greater than $75,000. Pascua's primary fear appears to be that he will accidentally pay the wrong party $41,139.92, which is the amount Wells Fargo is currently requesting he pay to avert foreclosure. The harm to Pascua of his fear that he might lose a second payment of $41,139.92 cannot plausibly be worth in excess of $75,000.

Of course, one collateral consequence of a favorable court order in this action is that Wells Fargo may be unable to foreclose upon him. However, "jurisdiction depends upon the matter directly in dispute in the particular cause, and the court is not permitted, for the purpose of determining its sum or value, to estimate its collateral effect." Quinault Tribe of Indians of Quinault Reservation in Wash. v. Gallagher, 368 F.2d 648, 655 (9th Cir. 1966). The matter directly in dispute is not whether Pascua owes payment, but to whom. Pascua does not dispute that the owner of his debt is entitled to foreclose on the property. Whatever the result of this action, Pascua must ultimately pay the money he owes, or face foreclosure. Any delay

in foreclosure that may result from this court action is a collateral consequence of Pascua's central claim, and therefore does not affect the amount in controversy calculation.

Because the allegations in the Complaint neither establish complete diversity nor an amount in controversy in excess of $75,000, the case is dismissed for lack of subject matter jurisdiction.

When a Complaint is dismissed, "leave to amend should be granted unless the court determines that the allegation of other facts *consistent with the challenged pleading* could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc., 806 F.2d 1393, 1401 (9th Cir. 1986) (emphasis added).  There is no way that Pascua, while remaining consistent with his original Complaint, can establish diversity jurisdiction in this court.  Pascua affirmatively states that he owes payments on his debt and requests only a declaration as to whom to pay.  The injury asserted is his uncertainty regarding this payment, and there is no way in which that alleged injury or its possible consequence can plausibly be worth in excess of $75,000 to Pascua.  The only way in which Pascua can establish that the amount in controversy is worth in excess of $75,000 is to contradict his original Complaint.

Of course, dismissal for lack of subject matter jurisdiction in this court does not preclude Pascua from pursuing

his remedies in state court.  See In re Jenson, 980 F.2d 1254, 1257 (9th Cir. 1992) ("To be given preclusive effect, a judgment must be a final adjudication of the rights of the parties and must dispose of the litigation on the merits.").  Nor does dismissal here preclude Pascua from alleging that Wells Fargo is not the true holder of the debt as a defense in any judicial foreclosure action initiated by Wells Fargo.  The court holds only that it lacks jurisdiction to adjudicate the specific declaratory relief sought in Pascua's Complaint.

**V.       CONCLUSION.**

Pascua's Complaint is dismissed for lack of subject matter jurisdiction.  The Clerk of Court is directed to enter judgment and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 28, 2014.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Pascua v. Option One et al; Civil No. 13-00406 SOM/KSC; ORDER DISMISSING COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

14